## Motion For Relief Information
### Post-Petition Ledger

| Filed By: | | | | | Payment Chang |
|---|---|---|---|---|---|
| | OSALEE    BURRELL | | | | |
| Case Number: | 2512800 | From Date | To Date | Total Amount | |
| Filing Date: | 07/14/2025 | 08/01/2025 | | $586.85 | |
| Payments in POC: | | | | | |
| First Post Due Date: | 08/01/2025 | | | | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance |
|---|---|---|---|---|
| 09/25/2025 | $600.00 | 08/01/25 | $586.85 | $13.15 |
| | | | $0.00 | $13.15 |
| | | | $0.00 | $13.15 |
| | | | $0.00 | $13.15 |
| | | | $0.00 | $13.15 |
| | | | | $13.15 |
| | | | | $13.15 |

MIN:                                    Loan Number:

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
## (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

FEBRUARY 20, 2007                ELKRIDGE            MARYLAND
[Date]                           [City]              [State]

3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA 19142
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $115,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION (CFL # 7981) I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    11.125 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st   day of each month beginning on APRIL 1, 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2037 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  7 ENTIN ROAD, PARSIPPANY, NEW JERSEY 07054

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,110.86          . This amount may change.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                Page 1 of 5

*DocMagic eForms*  800-649-1362
*www.docmagic.com*

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st    day of MARCH, 2009                , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 750/1000                          percentage point(s) (      5.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        14.125 % or less than        11.125 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                          percentage point(s) (        1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than        17.125 %. My interest rate will never be less than        11.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY    ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                          Page 2 of 5

DocMagic *EFerms*  800-649-1362
www.docmagic.com

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   1 5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5 . 0 0 0    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                Page 3 of 5

DocMagic eForms  800-649-1362
www.docmagic.com

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                    Page 4 of 5

DocMagic eForms 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)                    _____ (Seal)
HINDSALEE  G  BURRELL          -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                               -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                               -Borrower                                                      -Borrower

PAY TO THE ORDER OF:
  WITHOUT RECOURSE

CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

BY:   _____

ITS:

        Gerald Infantino, President

                                                           *[Sign Original Only]*

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                          Page 5 of 5

DocMagic EForms  800-649-1362
www.docmagic.com

# PREPAYMENT ADDENDUM TO NOTE

Loan Number:

Date: FEBRUARY 20, 2007

Borrower(s): HINDSALEE G BURRELL

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    20th    day of
FEBRUARY,    2007            , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CASTLE POINT
MORTGAGE, INC., A MARYLAND CORPORATION

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section  5    of the Note is amended to read in its entirety as follows:

## 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.

If within TWENTY-FOUR ( 24    ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount
of the loan, I will pay a Prepayment charge in an amount equal to    SIX    (  6    )
months' advance interest on the amount by which the total of my Prepayments within any 12-month
period exceeds twenty percent (20%) of the original Principal amount of the loan.

MULTISTATE PREPAYMENT ADDENDUM TO NOTE
6/03                                           Page 1 of 2                        DocMagic *eFerms*  800-649-1362
                                                                                 www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____ _____
Borrower HINDSALEE G BURRELL    Date    Borrower    Date

_____ _____
Borrower    Date    Borrower    Date

_____ _____
Borrower    Date    Borrower    Date

MULTISTATE PREPAYMENT ADDENDUM TO NOTE
6/03                                        Page 2 of 2              DocMagic eForms 800-649-1362
                                                                    www.docmagic.com

Page: 1 of 28
03/01/2007 04:53PM

This Document Recorded
03/01/2007
04:53PM
Doc Code: M          Commissioner of Records, City of Philadelphia

Doc Id: 51602889
Receipt #: 570708
Rec Fee: 126.50

This Instrument Prepared By:
CASTLE POINT MORTGAGE, INC
6800 DEERPATH ROAD, SUITE 105
ELKRIDGE, MD 21075
(800) 469-4850

After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number:

Uniform Parcel Identifier Number: 40-6-6139-12

Property Address:  3031 DOWITCHER PLACE
PHILADELPHIA, PENNSYLVANIA 19142

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

**MIN:**              13-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  FEBRUARY 20, 2007    , together with all Riders to this document.
(B)  "Borrower" is  HINDSALEE G BURRELL

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01 (02/01/07)                  Page 1 of 17

DocMagic ☎ 800-649-1362
www.docmagic.com

(D) "Lender" is CASTLE POINT MORTGAGE, INC.

Lender is a MARYLAND CORPORATION                                    organized
and existing under the laws of MARYLAND
Lender's address is 6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND
21075

(E) "Note" means the promissory note signed by Borrower and dated FEBRUARY 20, 2007
The Note states that Borrower owes Lender ONE HUNDRED FIFTEEN THOUSAND FIVE
HUNDRED AND 00/100                    Dollars (U.S. $ 115,500.00     ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MARCH 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |
| | PREPAYMENT RIDER TO SECURITY INST |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or

2

destruction of the Property; (iii) condemnation or other taking of all or any part of the Property; (iv) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

|          COUNTY          |  of  |        PHILADELPHIA         |   |
| [Type of Recording Jurisdiction] |  | [Name of Recording Jurisdiction] |  |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 40-6-6138-12

which currently has the address of          3031 DOWITCHER PLACE
                                                [Street]

        PHILADELPHIA                    , Pennsylvania     19142      ("Property Address"):
           [City]                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01 (02/01/07)                Page 3 of 17              DocMagic @Form: 800-649-1362
                                                                     www.docmagic.com

3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Hindsale G Burrell_ _____ (Seal)
HINDSALEE G BURRELL    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:

Witness:

_____

PENNSYLVANIA–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01  (02/01/07)    Page 15 of 17

DocMagic eForms 800-649-1362
www.docmagic.com

15

———————————————— [Space Below This Line For Acknowledgment] ————————————————

COMMONWEALTH OF PENNSYLVANIA )
                              ) SS:
COUNTY OF __PHILADELPHIA____ )

On this the _20th_ day of _FEBRUARY_, _2007_, before me,_ BRIAN J. SCHU_

the undersigned officer, personally appeared __HINDSALEE G BURRELL__

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

_____
                                Signature

COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
BRIAN J. SCHU, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 22, 2010

(Notary's Stamp and Embosser)        My commission expires: _4-22-10_

Title of Officer

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01  [02/01/07]                  Page 15 of 17

DocMagic eForms 800-649-1362
www.docmagic.com

16

Loan Number:

Date: FEBRUARY 20, 2007

Property Address:    3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA
19142

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THAT CERTAIN land and premises, Situate in the City and County of Philadelphia, and State of Pennsylvania.

BEGINNING at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly line of Dowitcher Place, said beginning point being in the extended middle line of party wall between Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said last mentioned party wall and its extensions, ninety feet to the place of beginning.

BEING known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street and Dowitcher Place, made by George W. Hotchard, L.S., dated August 10, 1965.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER 40-6-6139-12.

BEING the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No. 51321784, granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

A.P.N. # : 40-6-6139-12

DocMagic @ 800-649-1362
www.docmagic.com

20

page: 1 of 3
11/08/2005 01:24PM

PREPARED BY KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23232 PERALTA DR STE 119
LAGUNA HILLS, CA 92653

This Document Recorded
11/08/2005
01:24PM
Doc Code: A    Commissioner of Records, City of Philadelphia

Doc Id: 52140705
Receipt #: 890374
Rec Fee: 164.50

## ASSIGNMENT OF MORTGAGE

LOAN #:

FOR VALUE RECEIVED:
ASSIGNOR:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

ASSIGNOR ADDRESS:  6500 INTERNATIONAL PARKWAY, SUITE 1500
                   PLANO, TX 75093

HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:
ASSIGNEE:          DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE (NOT
                   IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE), IN TRUST
                   FOR REGISTERED HOLDERS OF VCM SERIES 2009-2

ASSIGNEE ADDRESS:  1761 EAST ST. ANDREW PLACE
                   SANTA ANA, CA 92705-4934

HEREBY CERTIFIES THAT ITS PRECISE ADDRESS IS REFLECTED ABOVE:

BY: _Jennifer A. Martinez_
NAME: Jennifer A. Martinez

ALL OF ITS RIGHT, TITLE, AND INTEREST IN AND TO THE PROPERTY COVERED BY THAT CERTAIN
MORTGAGE:

DATED:                          2/20/07
ORIGINAL LOAN AMOUNT:           $115,500.00
MORTGAGOR/BORROWER:             HINDSALEE G BURRELL
ORIGINAL MORTGAGEE/BENEFICIARY: CASTLE POINT MORTGAGE, INC

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF PHILADELPHIA COUNTY PENNSYLVANIA,
RECORDED: 3/1/07 IN BOOK/VOLUME/LIBER:    PAGE:    DOCUMENT: 51642889

PROPERTY SUBJECT TO LIEN:       3031 DOWITCHER PLACE, PHILADELPHIA, PA 19142
SEE ATTACHED LEGAL DESCRIPTION EXHIBIT A
TOWNSHIP/BUROUGH/WARD:                                      PIN: 40-8-6138-12

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO THEREIN AND SECURED
THEREBY, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED
OR TO ACCRUE UNDER SAID MORTGAGE.

IN WITNESS WHEREOF, ASSIGNOR HAS EXECUTED THIS INSTRUMENT AS OF THE
_10_ DAY OF _Sept._, 2009.

## Orion Financial Group Inc.

BURRELL, HINDSALLE
      ACQURA/VANT/ASN/BK

HINDSALLE G. BURRELL
Acqura Loan Services(Vantium)          DOT Matches Request
Vantium - Mortgage, Assignments & Sats      884678

ATTESTED BY:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR LENDER OF RECORD

BY: _____
NAME: ROBERT BARBARO

BY: _____
NAME: PHILLIP LIVINGSTON
TITLE: ASSISTANT VICE PRESIDENT

STATE OF TEXAS            ) SS:
COUNTY OF DENTON

ON __Sept. 10__, 2009 BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED PHILLIP LIVINGSTON, ASSISTANT VICE PRESIDENT PERSONALLY KNOWN
TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED
PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE CORPORATION, AND
ACKNOWLEDGED TO ME THAT SUCH ASSISTANT VICE PRESIDENT, EXECUTED THE WITHIN INSTRUMENT
PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
JENNIFER A MARTINEZ
NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES: 1-16-2013

JENNIFER A. MARTINEZ
Notary Public, State of Texas
My Commission Expires
January 16, 2013

PENNSYLVANIA 4/02

Loan Number:

Date:  FEBRUARY 20, 2007

Property Address:  3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA
19142

EXHIBIT "A"

LEGAL DESCRIPTION

ALL THAT CERTAIN land and premises, Situate in the City and County of Philadelphia, and State of Pennsylvania.

BEGINNING at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly line of Dowitcher Place, said beginning point being in the extended middle line of party wall between Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said last mentioned party wall and its extensions, ninety feet to the place of beginning.

BEING known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street and Dowitcher Place, made by George W. Hatchard, L.S., dated August 10, 1965.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER 40-5-6139-12.

BEING the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No. 51321784, granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

A.P.N. # : 40-5-6139-12

DocMagic-EZcamp  800-445-1362
www.docmagic.com

20

# Loan Modification Agreement

| | |
|---|---|
| **Modification Effective Date:** | 03/01/2018 |
| **Borrower(s):** | HINDSALEE G BURRELL |
| **Loan Number:** | |
| **Servicer:** | Bayview Loan Servicing, LLC |
| **Original Promissory Note ("Note"):** | 02/20/2007 |
| **Original Principal Balance:** | $115,500.00 |

**Mortgage ("Security Instrument"):** Mortgage securing the Note and creating a lien on certain real property ("Property") owned by Borrower.

**Borrower and Servicer agree to the following:**

1. **New Principal Balance:** $99,192.39 , including the existing unpaid principal balance of $98,786.54 plus the capitalized unpaid installments, interest, late charges, fees and costs, and if applicable, advances for unpaid property taxes and/or insurance premiums increased by $405.85. Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to forgive $1,976.85. You will never be required to pay this amount. There may be prior deferment or forgiveness related to this loan or this current Agreement. There could be tax consequences related to this deferment or forgiveness, you are advised to seek guidance from an independent tax professional. If your loan was a daily simple interest loan, once converted the loan will be modified into a standard amortizing loan.

2. **New Monthly Payment:** $452.45 , including monthly principal and interest payment of $300.38 , plus estimated monthly escrow payment of $152.07 .

3. **New Interest Rate:** 2.000%

4. **New Maturity Date:** 02/01/2058

5. **New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 02/01/2018 | $300.38 | $152.07 | $452.45 | 03/01/2018 | 60 |
| 6 | 3.000% | 02/01/2023 | $348.97 | Adjust Annually | Adjust Annually | 03/01/2023 | 12 |
| 7 | 4.000% | 02/01/2024 | $400.26 | Adjust Annually | Adjust Annually | 03/01/2024 | 12 |
| 8 | 5.000% | 02/01/2025 | $453.84 | Adjust Annually | Adjust Annually | 03/01/2025 | 12 |
| 9 | 6.000% | 02/01/2026 | $509.31 | Adjust Annually | Adjust Annually | 03/01/2026 | 12 |
| 10-40 | 7.000% | 02/01/2027 | $566.34 | Adjust Annually | Adjust Annually | 03/01/2027 | 372 |

Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of





property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of the Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**No Other Changes:** Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement,

Borrower:

By: _Hindsalee Burrell_ Date: 1/6/18
HINDSALEE G BURRELL

Servicer:

By: _Lourdes Herrero_ Date: FEB 1 5 2018
Vice President, Bayview Loan Servicing, LLC

Specialized Call Representative
Phone Number: (844) 207-2535
Hours: Monday - Friday 8:00 a.m. - 8:00 p.m., ET
Fax Number: (305) 265-2540
E-mail: scr@bayviewloanservicing.com

Lourdes Herrero
AVP of Asset Management

## Disclaimers and Notices

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation. Bayview Loan Servicing, LLC., NMLS #2469.

The following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146.



51642089
Page: 1 of 28
03/01/2007 04:33PM

5B-17952

This Document Recorded
03/01/2007
04:33PM
Doc Code· M          Commissioner of Records, City of Philadelphia

Doc Id  51642089
Receipt # 578768
Rec Fee 135.50

This Instrument Prepared By:
CASTLE POINT MORTGAGE, INC
6800 DEERPATH ROAD, SUITE 105
ELKRIDGE, MD 21075
(800)469-4850

After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number:

Uniform Parcel Identifier Number: 40-6-6139-12

Property Address:  3031 DOWITCHER PLACE
PHILADELPHIA, PENNSYLVANIA 19142

——————— ——————— [Space Above This Line For Recording Data] ——————— ———————

# MORTGAGE

MIN:  1002735-0070200143-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated    FEBRUARY 20, 2007    , together with all Riders to this document.
(B)  "Borrower" is  HINDSALEE G BURRELL

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

1

(D) "Lender" is CASTLE POINT MORTGAGE, INC.

Lender is a   MARYLAND CORPORATION                                                    organized
and existing under the laws of   MARYLAND
Lender's address is   6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND
21075

(E) "Note" means the promissory note signed by Borrower and dated   FEBRUARY 20, 2007
The Note states that Borrower owes Lender   ONE HUNDRED FIFTEEN THOUSAND FIVE
HUNDRED AND 00/100                      Dollars (U.S. $ 115,500.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MARCH 1, 2037
(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| [X] | Adjustable Rate Rider | [ ] | Planned Unit Development Rider |
| [ ] | Balloon Rider | [ ] | Biweekly Payment Rider |
| [ ] | 1-4 Family Rider | [ ] | Second Home Rider |
| [ ] | Condominium Rider | [X] | Other(s) [specify] |

PREPAYMENT RIDER TO SECURITY INST

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(L)    "Escrow Items" means those items that are described in Section 3.
(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or

2

destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY of PHILADELPHIA :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 40-6-6139-12

which currently has the address of 3031 DOWITCHER PLACE
[Street]

PHILADELPHIA, Pennsylvania 19142 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose

and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may

be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of

Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower.  Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an

additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient

7

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable,

8

notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security

10

Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

11

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other

12

information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under

13

Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

14

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HINDSALEE G BURRELL        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                              Witness:

_____    _____

15

## Certificate of Residence of Mortgagee

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:
P.O BOX 2026, FLINT MI 48501

Witness my hand this 20th day of FebRuARy 2007 .

_Signature of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent_

J. JACKSON
_Type or Print Name of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent_

17

―――――――――― [Space Below This Line For Acknowledgment] ――――――――――

COMMONWEALTH OF PENNSYLVANIA )
                              ) SS:
COUNTY OF __PHILADELPHIA___ )

On this the _20th_ day of __February__, 2007, before me__ __BRIAN J Schu__

the undersigned officer, personally appeared __HINDSALEE G BURRELL__

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

_____
Signature

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
BRIAN J. SCHU, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 22, 2010

_____
Title of Officer

(Notary's Stamp and Embosser)    My commission expires: _4.22-10_

16

Loan Number:

Date: FEBRUARY 20, 2007

Property Address: 3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA
19142

# EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN land and premises, Situate in the City and County of Philadelphia and State of
Pennsylvania.

BEGINNING at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet
Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly
line of Dowitcher Place, said beginning point being in the extended middle line of party wall between
Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty
seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a
point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence
South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last
mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty
seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the
aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place;
thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said
last mentioned party wall and its extensions, ninety feet to the place of beginning.

BEING known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street
and Dowitcher Place, made by George W. Hatchard, L.S., dated August 10, 1965.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER 40-6-6139-12.

BEING the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate
of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of
the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No. 51321784,
granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

A.P.N. #: 40-6-6139-12

DocMagic @ Phone 800-649-1362
www.docmagic.com

20

# PREPAYMENT RIDER

Loan Number:

Date: FEBRUARY 20, 2007

Borrower(s): HINDSALEE G BURRELL


THIS PREPAYMENT RIDER (the "Rider") is made this 20th    day of FEBRUARY
2007                    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

   3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA 19142
                              [Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase. If this Note provides for a variable interest rate or finance
charge, and the interest rate or finance charge at any time exceeds the legal limit under

18

which a Prepayment penalty is allowed, then the Note Holder's right to assess a
Prepayment penalty will be determined under applicable law.

If within TWENTY - FOUR ( 24 ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds twenty percent (20%)
of the original Principal amount of the loan, I will pay a Prepayment charge in an amount
equal to SIX ( 6 ) months' advance interest on the amount by which
the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of
the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.


_____ (Seal)          _____ (Seal)
HINDSALEE G BURRELL        -Borrower                                   -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower


MULTISTATE PREPAYMENT RIDER                                DocMagic EForms 800-649-1362
6/03                          Page 2 of 2                       www.docmagic.com

19

RECORD & RETURN TO
CT LIEN SOLUTIONS
P.O. BOX 29071
Glendale, CA 91209-9071

44009027-PA600-Philadelphia Co



52811851
Page: 1 of 4
08/01/2014 02:51PM

PREPARED BY KC WILSON
AFTER RECORDATION RETURN TO:

This Document Recorded        Doc Id:
08/01/2014                    Receipt #:
02:51PM                       Rec Fee: 208.00
Doc Code: A     Commissioner of Records, City of Philadelphia

BN #

## ASSIGNMENT OF MORTGAGE

LOAN #:
FOR VALUE RECEIVED:
ASSIGNOR:        **DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS
                INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE) IN TRUST FOR
                REGISTERED HOLDERS OF VCM SERIES 2009-2**

ASSIGNOR ADDRESS: **1761 EAST ST ANDREW PLACE
                  SANTA ANA, CA 92705**

HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:
ASSIGNEE:        Bayview Loan Servicing, LLC                4425 Ponce De Leon, 5th FL
ASSIGNEE ADDRESS:                           at:            Coral Gables, FL 33146

HEREBY CERTIFIES THAT ITS PRECISE ADDRESS IS REFLECTED ABOVE:

BY:
NAME:   Melba Castrillon

ALL OF ITS RIGHT, TITLE, AND INTEREST IN AND TO THE PROPERTY COVERED BY THAT CERTAIN
MORTGAGE:
DATED:                           **2/20/07**
ORIGINAL LOAN AMOUNT:            **$115,500.00**
MORTGAGOR/BORROWER:              **HINDSALEE G BURRELL**
ORIGINAL MORTGAGEE/BENEFICIARY:  **CASTLE POINT MORTGAGE INC**

**RECORDED IN** THE OFFICIAL REAL PROPERTY RECORDS OF **PHILADELPHIA** COUNTY
**PENNSYLVANIA**, RECORDED: **3/1/07** IN BOOK/VOLUME/LIBER:  PAGE: DOCUMENT: **51642089**

**PROPERTY SUBJECT TO LIEN: 3031 DOWITCHER PLACE, PHILADELPHIA, PA 19142**

TOWNSHIP/BUROUGH/WARD: Philadelphia  PIN: **40-6-6139-12**
Legal Description: See attached exhibit "A"
TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO THEREIN AND
SECURED THEREBY, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL
RIGHTS ACCRUED OR TO ACCRUE UNDER SAID MORTGAGE.

IN WITNESS WHEREOF, ASSIGNOR HAS EXECUTED THIS INSTRUMENT AS OF THE
4th DAY OF December, 2013.

PENNSYLVANIA 4/02

BV #

ATTESTED BY:

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE) IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2

BY: ACQURA LOAN SERVICES, ITS ATTORNEY IN FACT

BY: _Janice Kindel_
NAME: Janice Kindel

BY: _____
NAME: Lisa Miller
TITLE: Vice President

STATE OF Texas SS:
COUNTY OF Collin

ON _December 4th_, 2013 BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED ~~Lisa~~ Lisa Miller , Vice President PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE _Company_, AND ACKNOWLEDGED TO ME THAT SUCH _Vice President_, EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.

WITNESS MY HAND AND OFFICIAL SEAL.

JAROD KNIGHT
Notary Public, State of Texas
My Commission Expires
August 14, 2017

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES: 8/14/2017

PENNSYLVANIA 4/02



JAROD KNIGHT
Notary Public, State of ...
... County, ...
... Commission Expires
August 14, 201...

eRecorded in Philadelphia PA   Doc Id
12/10/2018 08:46 AM    Page 1 of 3    Rec Fee: $224.75
Receipt#:
Records Department    Doc Code: A

When Record Return To:
ATTN: DOC INTAKE
MERIDIAN ASSET SERVICES
3201 34TH STREET SOUTH,
STE. 310
ST. PETERSBURG, FL, 33711

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #        TS Ref #:        / Client Ref #
PA/PHILADELPHIA

Assignment Prepared on: July 16, 2018

**ASSIGNOR: BAYVIEW LOAN SERVICING, LLC**, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE: J.P. MORGAN MORTGAGE ACQUISITION CORP.**, at 383 MADISON AVE, 8TH FLOOR, NEW YORK, NY, 10179

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 2/20/2007, in the amount of $115,000.00, executed by HINDSALEE G BURRELL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CASTLE POINT MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS and Recorded: 3/1/2007, Document #: 51642089 in PHILADELPHIA County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 383 MADISON AVE, 8TH FLOOR, NEW YORK, NY, 10179

Attested By:_____        Yamile Vilorio

The property is located in the City of PHILADELPHIA.
Property Address: 3031 DOWITCHER PLACE, PHILADELPHIA, PA, 19142
Legal Description: See Exhibit 'A' attached hereto and by this reference made a part hereof

Document References:
- Assignment Dated: 9/10/2009 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2 Recorded: 11/6/2009, Document #: 52140755
- Assignment Dated: 12/4/2013 from DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE) IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2 to BAYVIEW LOAN SERVICING, LLC Recorded: 8/1/2014, Document #: 52811851

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Page: 2 of 2 / TS Ref #

BAYVIEW LOAN SERVICING, LLC

On: 08/28/2018

By:

Name: PETER SUAREZ

Title:   ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 08/28/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared PETER SUAREZ, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

PA/PHILADELPHIA

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN land and premises, Situate in the City and County of Philadelphia, and State of Pennsylvania.

BEGINNING at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly line of Dowitcher Place, said beginning point being in the extended middle line of party wall between Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said last mentioned party wall and its extensions, ninety feet to the place of beginning.

BEING known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street and Dowitcher Place, made by George W. Hatchard, L.S., dated August 10, 1965.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER 40-6-6139-12.

BEING the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No: 51321764, granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

:

When Record Return To:
ATTN: DOC INTAKE
MERIDIAN ASSET SERVICES
3201 34TH STREET SOUTH,
STE. 310
ST. PETERSBURG, FL, 33711

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #:        / TS Ref #:                / Client Ref #: ...
PA/PHILADELPHIA

Assignment Prepared on: July 16, 2018

**ASSIGNOR: BAYVIEW LOAN SERVICING, LLC, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146**

**ASSIGNEE: J.P. MORGAN MORTGAGE ACQUISITION CORP., at 383 MADISON AVE, 8TH FLOOR, NEW YORK, NY, 10179**

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 2/20/2007, in the amount of $115,000.00, executed by HINDSALEE G BURRELL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CASTLE POINT MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS and Recorded: 3/1/2007, Document #: 51642089 in PHILADELPHIA County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 383 MADISON AVE, 8TH FLOOR, NEW YORK, NY, 10179

Attested By: _____        Yamile Vilorio

The property is located in the City of PHILADELPHIA.
Property Address: 3031 DOWITCHER PLACE, PHILADELPHIA, PA, 19142
Legal Description: See Exhibit 'A' attached hereto and by this reference made a part hereof

Document References:
- Assignment Dated: 9/10/2009 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2 Recorded: 11/6/2009, Document #: 52140755
- Assignment Dated: 12/4/2013 from DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE) IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2 to BAYVIEW LOAN SERVICING, LLC Recorded: 8/1/2014, Document #: 52811851

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Page: 2 of 2 / TS Ref #

BAYVIEW LOAN SERVICING, LLC

On: 08/28/2018

By: _____

Name: PETER SUAREZ

Title:   ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 08/28/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared PETER SUAREZ, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

PA/PHILADELPHIA

## EXHIBIT "A"

## LEGAL DESCRIPTION

**ALL THAT CERTAIN** land and premises, Situate in the City and County of Philadelphia, and State of Pennsylvania.

**BEGINNING** at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly line of Dowitcher Place, said beginning point being in the extended middle line of party wall between Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said last mentioned party wall and its extensions, ninety feet to the place of beginning.

**BEING** known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street and Dowitcher Place, made by George W. Hatchard, L.S., dated August 10, 1965.

**BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER**

**BEING** the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No: 51321784, granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

eRecorded in Philadelphia PA   Doc I
10/18/2019 02:27 PM   Page 1 of 3   Rec Fee: $224.75
Receipt#: 19-105867
Records Department   Doc Code: A

Prepared By and Return To:
**Murat Deniz**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No:



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **J.P. MORGAN MORTGAGE ACQUISITION CORP.**, whose address is **383 MADISON AVENUE, 8TH FLOOR, NEW YORK, NY 10179**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS CERTIFICATE TRUSTEE FOR NNPL TRUST SERIES 2012-1**, whose address is **500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **2/20/2007**
Original Loan Amount: **$115,500.00**
Executed by (Borrower(s)): **HINDSALEE G BURRELL**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CASTLE POINT MORTGAGE, INC., IT'S SUCCESSORS AND ASSIGNS.**
Filed of Record: In Book/Liber/Volume **N/A**, Page **N/A**
Document/Instrument No: **51642089** in the Recording District of **PHILADELPHIA, PA**, Recorded on 3/1/2007.

Legal Description & Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA 19142**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **9/25/2019**

**J.P. MORGAN MORTGAGE ACQUISITION CORP., BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: DANIEL SLEDD
Title: VICE PRESIDENT

Witness Name: **RACHEL PAPPALARDO**

BATCH#11491, POA WAS RECORDED IN PHILADELPHIA COUNTY, PA, ON 10/15/2019, INST#53578222

I hereby certify the precise address of the within named **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS CERTIFICATE TRUSTEE FOR NNPL TRUST SERIES 2012-1** (*Assignee*) *is* **500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801.**

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of       **FLORIDA**
County of     **PINELLAS**

On 9/25/2019, before me, **NICHOLAS SHANE MATTHEWS**, a Notary Public, personally appeared **DANIEL SLEDD, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR J.P. MORGAN MORTGAGE ACQUISITION CORP.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify DANIEL SLEDD, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **NICHOLAS SHANE MATTHEWS**
My commission expires: **1/16/2022**



NICHOLAS SHANE MATTHEWS
Commission # GG 175931
Expires January 16, 2022
Bonded Thru Budget Notary Services

## EXHIBIT "A"

ALL THAT CERTAIN land and premises, Situate in the City and County of Philadelphia, and State of Pennsylvania.

BEGINNING at a point in the Southeasterly line of Dowitcher Place distant Seventy One feet Southwestwardly from the intersection of the Northeasterly line of Dowitcher Place with the Southeasterly line of Dowitcher Place, said beginning point being in the extended middle line of party wall between Premises 3029 and 3031 Dowitcher Place; thence South forty nine degrees, twenty seven minutes, thirty seconds West along the Southeasterly line of Dowitcher Place eighteen and five one hundredths feet to a point in the extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence South forty degrees, thirty two minutes, thirty seconds East along the extended middle line of said last mentioned party wall and its extensions, ninety feet to a point; thence North forty nine degrees, twenty seven minutes, thirty seconds East eighteen and five one hundredths feet to a point in the aforementioned extended middle line of party wall between Premises 3031 and 3033 Dowitcher Place; thence North forty degrees, thirty two minutes, thirty seconds West along the extended middle line of said last mentioned party wall and its extensions, ninety feet to the place of beginning.

BEING known as No. 3031 Dowitcher Place, as shown on Blue Bell Manor, Final Survey, Harley Street and Dowitcher Place, made by George W. Hatchard, L.S., dated August 10, 1965.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER 40-6-8139-12.

BEING the same premises which Joanne Kaufman and Thomas E. Lang, Co-administrators of the Estate of Theresa J. Lang, by Deed dated November 9, 2005, and recorded November 25, 2005, in the Office of the Recorder of Deeds, in and for the County of Philadelphia, Pennsylvania, as Instrument No: 51321784, granted and conveyed unto Hindsalee G. Burrell, his heirs and assigns, in fee.

## Assignment Chain

| | |
|---|---|
| Assigned From: | BAYVIEW LOAN SERVICING, LLC |
| To: | J.P. MORGAN MORTGAGE ACQUISITION CORP. |
| AOM Recorded: | 12/10/2018 |
| AOM Recording Details: | Book: N/A; Page: N/A; DocumentNo: 53451243 |

eRecorded in Philadelphia PA    Doc Id:
05/30/2021 12:43 PM    Page 1 of 3    Rec Fee: $224.75
Receipt#: 21-55608
Records Department    Doc Code: A

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____    _____    Space above for Recorder's use _____

Loan No:



12154590

## CORRECTIVE ASSIGNMENT OF MORTGAGE

***This Assignment is being recorded to correct and replace the Assignment recorded on 03/11/2020 as
Instrument# 53643514 in the records of the Clerk of Philadelphia County, PA to correct the Assignee***
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE FOR NNPL TRUST SERIES
2012-1, whose address is 500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801,
(ASSIGNOR), does hereby grant, assign and transfer to WILMINGTON SAVINGS FUND SOCIETY, FSB,
NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRPL TRUST 2019-1, whose
address is 500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801, (ASSIGNEE), its
successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the
certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 2/20/2007
Original Loan Amount: $115,500.00
Executed by (Borrower(s)): HINDSALEE G BURRELL
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS
NOMINEE FOR CASTLE POINT MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS.
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: 51642089 in the Recording District of PHILADELPHIA, PA, Recorded on 3/1/2007.

Legal Description & Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 3031 DOWITCHER PLACE, PHILADELPHIA, PENNSYLVANIA
19142

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 5/7/2020

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE FOR NNPL TRUST SERIES 2012-1, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**
Title: **VICE PRESIDENT**

Witness Name: **BRIANNA DAVIAU**

POA BATCH #10980
POA WAS RECORDED PHILADELPHIA COUNTY, PA
ON 9/7/2018 INST:53414192

I hereby certify the precise address of the within named **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRPL TRUST 2019-1** (*Assignee*) *is* 500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801.

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        **FLORIDA**
County of     **PINELLAS**

On 5/7/2020, before me, **BARBARA BAKA**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE FOR NNPL TRUST SERIES 2012-1**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **BARBARA BAKA**
My commission expires: 2/26/2024

Barbara Baka
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG962750
Expires 2/26/2024

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**