# EXHIBIT "A"

LOAN # [redacted]
MIN: [redacted]

# NOTE

| | | |
|---|---|---|
| **April 22, 2022** | **Plymouth,** | **Michigan** |
| **[Date]** | **[City]** | **[State]** |

**5629 Malcolm Street, Philadelphia, PA 19143-4605**
**[Property Address]**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$112,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Success Mortgage Partners, Inc..**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.750 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **June 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2052,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **1200 South Sheldon Road, Suite 150**
**Plymouth, MI 48170**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$584.25.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



[redacted]

LOAN # [redacted]

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;



[redacted]

LOAN #: [redacted]

(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________________________ (Seal)
HINDSALEE BURRELL

**Lender: Success Mortgage Partners, Inc.**
**NMLS ID[redacted]**
**Loan O[redacted]uis Tulio**
**NMLS I[redacted]**

*[Sign Original Only]*



[redacted]

SUCCESS
MORTGAGE PARTNERS, INC.

# ALLONGE

**Loan Number:** [redacted]
**Loan Closed Date:** 04/22/2022

**Borrower:** Hindsalee Burrell

**Co-Borrower:**

**Borrower:**
**Co-Borrower:**

**Borrower:**
**Co-Borrower:**

**Borrower:**
**Co-Borrower:**

**Property Address:**
5629 Malcolm Street
Philadelphia PA 19143-4605

**Principal Balance:** 112,000.00

**Pay to the order of**

**Without Recourse**

**Company Name:** Success Mortgage Partners, Inc.

**By:** ______________________ **Team Lead Post-Closing**
LaTina Mitchell Title

# EXHIBIT "B"

eRecorded in Philadelphia PA Doc Id: 54029190
04/28/2022 02:07 PM Page 1 of 24 Rec Fee: $226.75
Receipt#[redacted]
Records Department Doc Code: M

**When recorded, return to:**
**Success Mortgage Partners, Inc.**
**Attn: Post Closing Dept.**
**1200 S. Sheldon Road - Ste. 150**
**Plymouth, MI 48170**

**This document was prepared by:**
**NICHOLAS BEITZ**
**Success Mortgage Partners**
**1200 S. Sheldon Road Ste. 150**
**Plymouth, MI 48170**

**APN #:**[redacted]

**Title Order No.:**[redacted]

**LOAN #:** [redacted]

**[Space Above This Line For Recording Data]**

# MORTGAGE

**MIN:**[redacted]
**MERS PHONE #: 1-888-679-6377**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.



[redacted]

File No: [redacted]

**EXHIBIT A**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate on the Northwest side of Malcolm Street at the distance of one hundred and eighty-five feet Southwestward from the Southwest side of Fifty-sixth Street in the 51st Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Malcolm Street fifteen feet and extending of that width in length or depth Northwestward between parallel lines at right angles with the said Malcolm Street sixty-two feet to a certain three feet wide alley extending Southwestward into Frazier Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter forever.

BEING known as 5629 Malcolm Street.

OPA NO[redacted]

BEING the same premises which Ogechi Trotman, by Deed dated 08/17/2018 and recorded 08/22/2018 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 53408024, granted and conveyed unto Z Block, LLC.

[redacted]

LOAN #: [redacted]

**(A) "Security Instrument"** means this document, which is dated **April 22, 2022,** together with all Riders to this document.

**(B) "Borrower"** is **HINDSALEE BURRELL, A SINGLE WOMAN.**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D) "Lender"** is **Success Mortgage Partners, Inc. .**

Lender is **a Michigan Corporation,** organized and existing under the laws of **Michigan.** Lender's address is **1200 South Sheldon Road, Suite 150, Plymouth, MI 48170.**

**(E) "Note"** means the promissory note signed by Borrower and dated **April 22, 2022.** The Note states that Borrower owes Lender **ONE HUNDRED TWELVE THOUSAND AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$112,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2052.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.



[redacted]

LOAN #: [redacted]

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that



[redacted]

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

**County** [Type of Recording Jurisdiction]
of **Philadelphia**
[Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #:**[redacted]

which currently has the address of **5629 Malcolm Street, Philadelphia,**
[Street] [City]
Pennsylvania **19143-4605** ("Property Address"):
[Zip Code]



[redacted]

LOAN [redacted]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance



[redacted]

LOAN # [redacted]

with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items



[redacted]

which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest



[redacted]

on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.



[redacted]

LOAN [redacted]

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.



[redacted]

LOAN #[redacted]

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.



[redacted]

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this



[redacted]

Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer



[redacted]

selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**



[redacted]

LOAN # [redacted]

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to



[redacted]

settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to



[redacted]

54029170 Page 17 of 24 04/23/2022 08:02 PM

LOAN # [redacted]

extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only



[redacted]

report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured



[redacted]

LOAN #[redacted]

by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with



[redacted]

a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to

be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower



[redacted]

shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;
(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;
(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;
(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;
(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;
(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;
(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;
(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;
(i) pay the fees required by Section 14 of this Security Instrument;
(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;
(k) pay any collection expenses under Section 22 of this Security Instrument; and
(l) pay interest at the rate payable from time to time under the Note.



[redacted]

**LOAN #** [redacted]

"Survival Event" means any of the following:

(a) any default described in the Note;
(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;
(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;
(d) the Maturity Date as defined in the Note;
(e) the entry of any judgment against Borrower under the Note; and
(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

4/22/22 **(Seal)**

**HINDSALEE BURRELL** **DATE**



[redacted]

**LOAN #** [redacted]

**State of** PA
**County of** Delaware

2022 **This record was acknowledged before me on this, the** 22 **day of** April,
**by HINDSALEE BURRELL.**

**Signature of Notarial Officer**
**(STAMP)**

Commonwealth of Pennsylvania - Notary Seal
Lauri Beth Pruyn, Notary Public
Delaware County
My commission expires October 1, 2024
Commission number 1377637
Member, Pennsylvania Association of Notaries

**Title of Officer** Closer

**My commission expires** 10/1/2024

**Lender: Success Mortgage Partners, Inc.**
**NMLS ID:** [redacted]
**Loan Originator: Louis Tulio**
**NMLS ID** [redacted]

Certificate of Residence
I, Lauri Beth Pruyn, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this 22 day of April 2022

Agent of Mortgagee



[redacted]

# EXHIBIT "C"

**Investor Loan #**[redacted]

**After Recording Return To:**
5001 Kingsley Dr
Cincinnati, OH 45227
Mail Drop[redacted]
This document was prepared by Loss Mitigation Department, Fifth Third Bank, N.A.

______________________**[Space Above This Line For Recording Data**[redacted]

**LOAN MODIFICATION AGREEMENT**
**First-Lien Closed-End Loan**
Permanent Rate Reduction - Fixed Rate Products
Permanent Rate Reduction - Extended Term - Fixed Rate Products

**MERS**[redacted]
**SIS phone number: 888-679-6377**

This Loan Modification Agreement (the "Agreement") is made on May 15, 2024, between HINDSALEE BURRELL ("Borrower(s)") and **Fifth Third Bank, National Association ("Lender")** and **Mortgage Electronic Registration Systems, Inc. ("MERS")**.

The parties recite and declare that:

a. Lender is the holder of a note made by Borrower(s), dated 04/22/2022 principal sum of One Hundred Twelve Thousand and 00/100 (U.S. $112,000.00) together with interest thereon at a fixed rate more fully set forth therein (the "Note").

b. The Note is secured by a Security Instrument bearing the same date (the "Security Instrument") that is recorded in the office of the Philadelphia County Recorder's Office, in Book or Liber n/a and/or Instrument Number n/a, at Page(s) n/a, which covers and is now a lien on the property whose street address is 5629 MALCOLM ST PHILADELPHIA, PA 19143 (the "Property"), and is further described in the Security Instrument and on Exhibit "A" attached hereto.

c. Borrower(s) is/are now the owner(s) and holder(s) of the Property, on which the Security Instrument is a valid and enforceable lien. There are no defenses or offsets to the Note or Security Instrument. Any other Lien against the Property has been fully disclosed to the Lender by the Borrower.

In consideration of the mutual promises and agreements exchanged, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that, notwithstanding anything contained in the Note and Security Instrument to the contrary:

d. The amount payable under the Note as of 05/01/2024 is One Hundred Eighteen Thousand One Hundred Forty-Six and 72/100 $118,146.72 (the "New Principal Balance"). The New Principal Balance consists of $110,703.57 in unpaid interest bearing principal, $5,849.36 in unpaid interest (the "Unpaid Interest") and $1,593.79 in advances.

| New Principal Balance | Deferred Amount with this agreement | Interest Bearing Principal | Modified Principal and interest payment | Due at Maturity (includes any prior deferred amounts) |
|---|---|---|---|---|
| $118,146.72 | $0.00 | $118,146.72 | $550.28 | $0.00 |

[redacted]

Borrower(s) do(es) have the option to pay the Unpaid Interest at the time of execution of this Agreement and not have the existing loan balance increase by the amount of the Unpaid Interest.

The parties agree that the Maturity Date of the Note and Security Instrument is extended to 05/01/2064. Borrower(s) acknowledge that extension of the Maturity Date does not extend the term of coverage of any credit life or disability insurance beyond the original loan term.

Borrower(s) promise(s) to pay to the order of Lender the Interest Bearing Principal Balance, plus interest thereon to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at a [modified] yearly rate of 4.75% from 05/01/2024. The Borrower promises to make monthly payments of principal and interest due under the Note of Five Hundred Fifty and 28/100 ($550.28) beginning on 06/01/2024, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

If all or part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower(s) is sold or transferred and the Borrower(s) is/are not a natural person(s)) without Lender's prior written consent, Lender may, at its option, require immediate repayment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fail(s) to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand of Borrower(s).

Borrower(s) also will comply with all other covenants, agreements, and requirements of the Note and Security Instrument, which are incorporated herein by reference, including without limitation, Borrower(s)' covenants and agreements to make all payment of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower(s) is/are obligated to make under the Security Instrument.

Borrower(s) understand(s) and agree(s) that:

a. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b. All covenants, agreements, stipulations, and conditions contained in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's(s') obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instruments, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c. Borrower(s) is/are presently in default under the terms of the Note and Security Instrument.

d. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorneys' fees shall be paid by the Borrower(s) and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e. Borrower(s) agree(s) to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower(s).

f. Borrower authorizes Lender, and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By this paragraph, Lender is notifying Borrower(s) that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the escrow items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

[redacted]

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note or Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain in full force and effect and unchanged, and Borrower(s) and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Each individual executing this Agreement warrants that she/he has actual authority to execute this Agreement, that she/he has had the opportunity to have legal counsel review and explain the provisions of this Agreement and that she/he has read this Agreement in full and understands its contents prior to signing said Agreement.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

[To be signed and dated by all borrowers, endorsers, guarantors, sureties, and other parties signing the Note and Security Instrument.]

Hindsalee Burrell 5/22/24

HINDSALEE BURRELL - Borrower Date

INDIVIDUAL ACKNOWLEDGMENT

STATE OF Pa, COUNTY OF Phila ss.

Before me a Notary Public in and for said County and State personally appeared HINDSALEE BURRELL, who is/are personally known to me or who has produced sufficient evidence of identification and who did take an oath and who executed the foregoing conveyance to Fifth Third Bank, National Association, and severally acknowledged the execution thereof ~~to be his/~~her free act and deed for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto affixed my name and official seal this 22nd day of May, 2024.

Notary Public
My Commission Expires 9-25-24

Commonwealth of Pennsylvania - Notary Seal
Amber Patterson, Notary Public
Philadelphia County
My commission expires September 25, 2024
Commission number 1271672
Member, Pennsylvania Association of Notaries

[redacted]

**DO NOT WRITE BELOW THIS LINE. FOR FIFTH THIRD USE ONLY.**

CORPORATE ACKNOWLEDGEMENT

Kimberly Taylor

FIFTH THIRD BANK, NATIONAL ASSOCIATION ______ Kimberly Taylor Vice President 513-358-3303 ______(Seal)

STATE OF Ohio, COUNTY OF Hamilton ss.

Before me, a Notary Public in and for said County and State personally appeared Fifth Third Bank, National Association, by Kimberly Taylor, its Vice President, the individual who executed the foregoing instrument and acknowledged that she/he did read the same and did sign the foregoing instrument and that the same is her/his free act and deed and the free act and deed of Fifth Third Bank, National Association.

IN WITNESS WHEREOF, I have hereunto affixed ~~my~~ my name and official seal this 11th day of July, 2024.

Amanda M Cotton

Notary Public
My Commission Expires March 21 2027

NOTARY PUBLIC STATE OF OHIO

AMANDA M COTTON
Notary Public
State of Ohio
My Comm. Expires
March 21, 2027

______

[redacted]

**EXHIBIT "A"** [redacted]

**ALL THAT CERTAIN** lot or piece of ground with the buildings and improvements thereon erected, Situate on the Northwest side of Malcolm Street at the distance of one hundred and eighty-five feet Southwestward from the Southwest side of Fifty-sixth Street in the 51st Ward of the City of Philadelphia.

**CONTAINING** in front or breadth on the said Malcolm Street fifteen feet and extending of that width in length or depth Northwestward between parallel lines at right angles with the said Malcolm Street sixty-two feet to a certain three feet wide alley extending Southwestward into Frazier Street.

**TOGETHER** with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter forever.

**BEING** known as 5629 Malcolm Street.

**OPA NO.** [redacted]

**BEING** the same premises which Ogechi Trotman, by Deed dated 08/17/2018 and recorded 08/22/2018 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 53408024, granted and conveyed unto Z Block, LLC.

FIFTH THIRD BANK

**Errors And Omissions/Compliance Agreement**

The undersigned Borrower(s) for and in consideration of the Lender this date funding the closing or modifying this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan documentation, if deemed necessary or desirable in the reasonable discretion of Lender, to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including, but not limited to, as investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan documentation executed this date will confirm and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest and to said loan documentation.

[signature] 5/22/24

HINDSALEE BURRELL - Borrower Date

**INDIVIDUAL ACKNOWLEDGMENT**

**STATE OF** pa, **COUNTY OF** phila

Before me a Notary Public in and for said County and State personally appeared ____________________________, who is/are personally known to me or have produced sufficient evidence of identification and who did take an oath and who executed the foregoing **Errors and Omissions/Compliance Agreement** and severally acknowledged the execution thereof to be his/her free act and deed for the uses and purposes therein mentioned.

**In WITNESS WHEREOF** I have hereunto affixed my name and official seal this 22nd day of May, 2024.

[signature]

**Notary Public**

**My Commission Expires** 9-25-24

Commonwealth of Pennsylvania - Notary Seal
Amber Patterson, Notary Public
Philadelphia County
My commission expires September 25, 2024
Commission number 1271672
Member, Pennsylvania Association of Notaries

[redacted]

FIFTH THIRD BANK

**Notice Of No Oral Agreements**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Receipt of Notice: The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the 'Loan Agreement'. 'Loan Agreement' means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayments of or agrees to or delays repayments of money, goods, or any other thing of value or to otherwise extend credit, or make a financial accommodation.

Hindsalee Burrell 5/22/24
HINDSALEE BURRELL - Borrower Date

**INDIVIDUAL ACKNOWLEDGMENT**

**STATE OF** pa**, COUNTY OF** phila

Before me a Notary Public in and for said County and State personally appeared __________________________, who is/are personally known to me or have produced sufficient evidence of identification and who did take an oath and who executed the foregoing **Notice of No Oral Agreements** and severally acknowledged the execution thereof to be his/her free act and deed for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto affixed my name and official seal this 22nd day of May, 2024

Notary Public
My Commission Expires 9-25-24

Commonwealth of Pennsylvania - Notary Seal
Amber Patterson, Notary Public
Philadelphia County
My commission expires September 25, 2024
Commission number 1271672
Member, Pennsylvania Association of Notaries

[redacted]

# SAME NAME AFFIDAVIT

STATE OF:

COUNTY OF:

THE UNDERSIGNED, after being duly sworn upon, oath deposes and says:
That in reference to the transaction of the property located at:

5629 Malcolm St
Philadelphia, PA 19143
United States

Appears on some modification documents as:

Hindsalee Burrell

I hereby certify that the above are all one and the same.

SIGNED this 22 day of May, 2024

Hindsalee Burrell

Hindsalee Burrell Authorized Agent

Subscribed and sworn before this 22nd day of May, 2024

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Amber Patterson, Notary Public
Philadelphia County
My commission expires September 25, 2024
Commission number 1271672
Member, Pennsylvania Association of Notaries

State/Commonwealth of: Pa

Acting in the County/Parish of: Phila

My Commission Expires: 9-25-24

# EXHIBIT "D"

#Recorded in Philadelphia PA Doc Id: 54226616
09/25/2023 11:40 AM Page 1 of 3 Rec Fee: $221.50
Receipt# [redacted]
Records Department Doc Code: A

**Record and Return To:**
FIFTH THIRD BANK
LIEN RELEASE
38 FOUNTAIN SQUARE PLAZA
MD# 1MOBB1
CINCINNATI, OH 45273

Property Address: **5629 MALCOLM STREET, PHILADELPHIA, PA 19143**
Loan [redacted]
MIN [redacted]
MERS Phone #: **(888) 679-6377**

---

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR SUCCESS MORTGAGE PARTNERS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS , 11819 MIAMI ST. SUITE 100, OMAHA, NE 68164 (888) 679-6377,** by these presents does convey, assign, and transfer and set over to: **FIFTH THIRD BANK, N.A., 5001 KINGSLEY DRIVE 1MOBB1, CINCINNATI, OH 45227,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$112000.00** is recorded in the State of **PENNSYLVANIA,** County of **Philadelphia** Official Records, dated **04/22/2022** and recorded on **04/23/2022,** as Instrument No. **54029170** in Book No. **N/A,** at Page No. **N/A**

Original Mortgagor: **HINDSALEE BURRELL a single woman**

Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR SUCCESS MORTGAGE PARTNERS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**

Municipality: **City of PHILADELPHIA**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 11819 Miami St., Suite 100, Omaha, NE 68164 P.O. BOX 2026, FLINT, MI 48501-2026

Legal Description: **ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS-THEREON ERECTED, SITUATE ON THE NORTHWEST SIDE OF MALCOLM STREET AT THE DISTANCE OF ONE HUNDRED AND EIGHTY-FIVE FEET SOUTHWESTWARD FROM THE SOUTHWEST SIDE OF FIFTY-SIXTH STREET IN THE 51ST WARD OF THE CITY OF PHILADELPHIA. CONTANING IN FRONT OR BREADTH ON THE SAID MALCOLM STREET FIFTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHWESTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES WITH THE SAID MALCOLM STREET SIXTY-TWO FEET TO A CERTAIN THREE FEET WIDE ALLEY EXTENDING SOUTHWESTWARD INTO FRAZIER STREET. TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID ALLEY AS AND FOR A PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER FOREVER. BEING KNOWN AS 5629 MALCOLM STREET. OPA NO. 513169600 BEING THE SAME PREMISES WHICH OGECHI TROTMAN, BY DEED DATED 08/17/2018 AND RECORDED 08/22/2018 IN THE OFFICE OF THE RECORDER OF DEEDS IN AND FOR THE COUNTY OF PHILADELPHIA IN DOCUMENT NO. 53408024, GRANTED AND CONVEYED UNTO Z BLOCK, LLC.**

Date: **09/22/2023.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR SUCCESS MORTGAGE PARTNERS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**

By: Todd Reese
Name: **Todd Reese**
Title: **Vice President**

STATE OF **Ohio**
COUNTY OF **HAMILTON** } s.s.

On **09/22/2023**, before me, **Sally Knox**, Notary Public, personally appeared **Todd Reese, Vice President** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR SUCCESS MORTGAGE PARTNERS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Sally Knox

Notary Public: **Sally Knox**
My Commission Expires: **05/18/2026**
Commission #: **2016-RE-570684**

NOTARY PUBLIC STATE OF OHIO
**SALLY KNOX**
Notary Public, State of Ohio
My Commission Expires
May 18, 2026
COMMISSION: 2016-RE-570684

CERTIFICATE OF RESIDENCE

The undersigned does hereby certify that the precise address of the Mortgagee is: **5001 KINGSLEY DRIVE 1MOBB1, CINCINNATI, OH 45227**

BY:

____________________

Todd Reese

**eRecorded in Philadelphia PA Doc Id: 54514088**
**01/28/2026 10:00 AM Page 1 of 2 Rec Fee: $246.75**
**Receipt#**[redacted]
**Records Department Doc Code: A**

**Record and Return To:**
FIFTH THIRD BANK
LIEN RELEASE
38 FOUNTAIN SQUARE PLAZA
MD# 1MOBB1
CINCINNATI, OH 45273

Drafted By: **CHERYL CULLICK**
Loa[redacted]
MI[redacted]
MERS Phone #: **(888) 679-6377**
MERS Address: **11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026**

---

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **FIFTH THIRD BANK, NATIONAL ASSOCIATION, SBM TO FIFTH THIRD BANK, N.A. , 5001 KINGSLEY DR, CINCINNATI, OH 45227,** by these presents does convey, assign, and transfer and set over to: **Newrez LLC dba Shellpoint Mortgage Servicing, 1100 Virginia Drive STE 125, Fort Washington, PA 19034 ,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon.
Original Mortgagor: **HINDSALEE BURRELL a single woman**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR SUCCESS MORTGAGE PARTNERS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**

Dated: **04/22/2022** Recorded: **04/23/2022** Instrument: **54029170** Book: **N/A** Page: **N/A** in **Philadelphia** County, **PA** Loan Amount: **$112,000.00**
Municipality: **City of CITY OF PHILADELPHIA**

Property Address: **5629 MALCOLM STREET, PHILADELPHIA, PA 19143** UPI #/Parcel Tax ID: [redacted]

Legal: **ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE ON THE NORTHWEST SIDE OF MALCOLM STREET AT THE DISTANCE OF ONE HUNDRED AND EIGHTY-FIVE FEET SOUTHWESTWARD FROM THE SOUTHWEST SIDE OF FIFTY-SIXTH STREET IN THE 51ST WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID MALCOLM STREET FIFTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHWESTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES WITH THE SAID MALCOLM STREET SIXTY-TWO FEET TO A CERTAIN THREE FEET WIDE ALLEY EXTENDING SOUTHWESTWARD INTO FRAZIER STREET. TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID ALLEY AS AND FOR A PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER FOREVER. BEING KNOWN AS 5629 MALCOLM STREET. BEING THE SAME PREMISES WHICH OGECHI TROTMAN, BY DEED DATED 08/17/2018 AND RECORDED 08/22/2018 IN THE OFFICE OF THE RECORDER OF DEEDS IN AND FOR THE COUNTY OF PHILADELPHIA IN DOCUMENT NO. 53408024, GRANTED AND CONVEYED UNTO Z BLOCK, LLC.**
Date: **01/26/2026 .**

**FIFTH THIRD BANK, NATIONAL ASSOCIATION, SBM TO FIFTH THIRD BANK, N.A.**

By: ______________________________
Name: **Davonda Jackson**
Title: **Officer**

STATE OF **Ohio**
COUNTY OF **HAMILTON** } S.S.

On **01/26/2026 ,** before me, **Patricia L Evans ,** Notary Public, personally appeared **Davonda Jackson , Officer** of **FIFTH THIRD BANK, NATIONAL ASSOCIATION, SBM TO FIFTH THIRD BANK, N.A.** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person (s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

NOTARY PUBLIC STATE OF OHIO

PATRICIA L. EVANS
Notary Public, State of Ohio
My Commission Expires June 10, 2026

Notary Public: **Patricia L Evans**
My Commission Expires: **06/10/2026**
Commission #: **2021-RE-832661**

I do certify that the precise address of **Newrez LLC dba Shellpoint Mortgage Servicing** is **1100 Virginia DriveSTE 125, Fort Washington, PA 19034**

Attested By:

**Davonda Jackson** , **Officer**

# EXHIBIT "E"

Case 25-12800-djb Doc 56 Desc Main Document Page 1 of 6

L.B.F. 3015.1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re: Burrell, Hindsalee

Chapter 13

Case No. **25-12800**

Debtor(s)

# Chapter 13 Plan

☐ Original
☑ **Third** Amended

Date: **09/15/2026**

## THE DEBTOR HAS FILED FOR RELIEF UNDER CHAPTER 13 OF THE BANKRUPTCY CODE

## YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

## IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE NOTICE OF MEETING OF CREDITORS.

## Part 1: Bankruptcy Rule 3015.1(c) Disclosures

☐ Plan contains non-standard or additional provisions – see Part 9

☐ Plan limits the amount of secured claim(s) based on value of collateral and/or changed interest rate – see Part 4

☐ Plan avoids a security interest or lien – see Part 4 and/or Part 9

## Part 2: Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE*

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan:** **60** **months.**

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") **$26,831.00**

Debtor shall have already paid the Trustee **$4,843.00** through month number **14** and then shall pay the Trustee **$478.00** per month for the remaining **46** months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b) Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution:**

| | | | | |
|---|---|---|---|---|
| A. | Total Administrative Fees (Part 3) | | | |
| | 1. | Postpetition attorney's fees and costs | $ | 5,133.00 |
| | 2. | Postconfirmation Supplemental attorney's fees and costs | $ | 0.00 |
| | | Subtotal | $ | 5,133.00 |
| B. | Other Priority Claims (Part 3) | | $ | 3,298.18 |
| C. | Total distr bution to cure defaults (§ 4(b)) | | $ | 15,692.42 |
| D. | Total distr bution on secured claims (§§ 4(c) &(d)) | | $ | 0.00 |
| E. | Total distr bution on general unsecured claims(Part 5) | | $ | 24.30 |
| | | Subtotal | $ | 24,147.90 |
| F. | Estimated Trustee's Commission | | $ | 2,683.10 |
| G. | Base Amount | | $ | 26,831.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ 6,633.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

## Part 3: Priority Claims

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.**

| Creditor | Proof of Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| C bik Law, P.C. | | Attorney Fees | $5,133.00 |
| Internal Revenue Service | 4 | Taxes or Penalties Owed to Governmental Units | $3,298.18 |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

## Part 4: Secured Claims

**§ 4(a) Secured Claims Receiving No Distribution from the Trustee:**

☑ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

**§ 4(b) Curing default and maintaining payments**

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Proof of Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| NewRez, LLC (Pre-Petition) | 13 | 5629 Malcolm Street Philadelphia, PA 19143 | $3,538.95 |
| Trumark Financial Credit Union (Arrearage) | 6 | 3031 Dowitcher Pl Philadelphia, PA 19142-3308 | $666.50 |
| Wilmington Savings Fund Society (Pre-Petition) | 22 | 3031 Dowitcher Pl Philadelphia, PA 19142-3308 | $3,048.26 |
| NewRez, LLC (Post-Petition) | 13 | 5629 Malcolm Street Philadelphia, PA 19143 | $4,754.45 |
| Wilmington Savings Fund Society (Post-Petition) | 26 | 3031 Dowitcher Pl Philadelphia, PA 19142-3308 | $3,684.25 |

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim**

☑ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☑ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

**§ 4(e) Surrender**

Case 25-12800-djb Doc 56 Filed 09/16/25 Entered 09/16/25 12:17:30 Desc Main Document Page 4 of 6

☐ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

(1) Debtor elects to surrender the secured property listed below that secures the creditor's claim.

(2) The automatic stay under 11 U.S.C. § 362(a) and 1301(a) with respect to the secured property terminates upon confirmation of the Plan.

(3) The Trustee shall make no payments to the creditors listed below on their secured claims.

| Creditor | Proof of Claim Number | Secured Property |
|---|---|---|
| Santander Bank | 5 | 2021 Toyota Rav 4 |

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with ______________ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of ______________ per month, which represents ______________ (***describe basis of adequate protection payment***). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by ______________ (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5: General Unsecured Claims

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

***(1)*** Liquidation Test ***(check one box)***

☑ All Debtor(s) property is claimed as exempt.

☐ Debtor(s) has non-exempt property valued at $ ______________ for purposes of § 1325(a)(4) and plan provides for distribution of $ ______________ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows ***(check one box):***

☑ Pro rata

☐ 100%

☐ Other (Describe) ________________________________________

## Part 6: Executory Contracts & Unexpired Leases

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

## Part 7: Other Provisions

**§ 7(a) General principles applicable to the Plan**

(1) Vesting of Property of the Estate ***(check one box)***

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan. Debtor shall amend the plan or file an objection should a filed unsecured claim render the Plan unfeasible.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

**§ 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence**

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

**§ 7(c) Sale of Real Property**

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

## Part 8: Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1:** Trustee Commissions*
**Level 2:** Domestic Support Obligations
**Level 3:** Adequate Protection Payments
**Level 4:** Debtor's attorney's fees
**Level 5:** Priority claims, pro rata
**Level 6:** Secured claims, pro rata
**Level 7:** Specially classified unsecured claims
**Level 8:** General unsecured claims
**Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

***Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent. If the Trustee's compensation rate increases resulting in the Plan becoming underfunded, the debtor shall move to modify the Plan to pay the difference.***

## Part 9: Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

## Part 10: Signatures

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date: **09/15/2026**

**/s/ Michael A. Cibik**
Michael A. Cibik
Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date: ____________________

____________________________
Hindsalee Burrell
Debtor

Date: ____________________

____________________________
Joint Debtor

# EXHIBIT "F"

| Post-Petition Due date | Date Posted | Amount Received | Amount Due | Credit | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|---|
| | | | | | | |
| 8/1/2025 | 12/18/2025 | $696.04 | $696.04 | | $ - | $ - |
| 9/1/2025 | 1/14/2026 | $696.04 | $696.04 | | $ - | $ - |
| 10/1/2025 | 2/13/2026 | $700.00 | $696.04 | | $ 3 96 | $ 3 96 |
| 11/1/2025 | 2/24/2026 | $695.62 | $696.04 | | $ (0 42) | $ 3 54 |
| 12/1/2025 | 3/11/2026 | $697.00 | $696.04 | | $ 0 96 | $ 4 50 |
| 1/1/2026 | 4/24/2026 | $700.00 | $696.04 | | $ 3 96 | $ 8 46 |
| | 5/29/2026 | $218.00 | | | $ 218 00 | $ 226 46 |
| 2/1/2026 | 7/10/2026 | $697.00 | $696.04 | | $ 0 96 | $ 227 42 |
| 3/1/2026 | | | $696.04 | | $ (696 04) | $ (468 62) |
| 4/1/2026 | | | $696.04 | | $ (696 04) | $ (1,164 66) |
| 5/1/2026 | | | $696.04 | | $ (696 04) | $ (1,860 70) |
| 6/1/2026 | | | $696.04 | | $ (696 04) | $ (2,556 74) |
| 7/1/2026 | | | $732.57 | | $ (732 57) | $ (3,289 31) |
| 8/1/2026 | | | $732.57 | | $ (732 57) | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |
| | | | | | $ - | $ (4,021 88) |

| | |
|---|---|
| Loan Number | [redacted] |
| Debtor | BURRELL |
| BK filed date | 7/14/2025 |
| BK Case # | 25-12800 |
| Loan Acquired | 12/1/2025 |
| Post Next Due | 3/1/2026 |
| Suspense | $ 227.42 |

| Due Date | Due Amount | Credit | # Months | Total Due |
|---|---|---|---|---|
| 03/01/2026 - 06/01/2026 | $696.04 | | 4 | $ 2,784.16 |
| 07/01/2026 - 08/01/2026 | $732.57 | | 2 | $ 1,465.14 |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | Subtotal | $ 4,249.30 |
| | | | Less Unapplied | $ 227.42 |
| | | | Total to bring current | $ 4,021.88 |

| | | |
|---|---|---|
| $ | 4,249.30 | |
| $ | (4,021.88) | |
| $ | 227.42 | unapplied |

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

August 17, 2026

BURRELL, HINDSALEE
3031 Dowitcher Place
PHILADELPHIA, PA 19142

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: [redacted]
HINDSALEE BURRELL
5629 MALCOLM ST
PHILADELPHIA, PA 19143

Loan Type: Conventional

When remitting funds:

1. **YOU MUST include your loan number to ensure proper posting and provide us with the borrower's forwarding address.**
2. **This Payoff quote is effective 8/17/2026 and is good to 8/17/2026.**
   **Any transactions that occur on or after the effective date may change the payoff amount.**
3. Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

| **Projected Payoff Date** | **8/17/2026** |
|---|---|
| Principal Balance | $116,430.24 |
| Interest To 8/17/2026 | $3,929.39 |
| Fees | $167.55 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $2,068.84 |
| Funds owed to borrower | ($147.18) |
| **Total Payoff** | **$122,448.84** |
| Per diem | $15.15 |

For the protection of all parties and to ensure immediate availability of funds, final mortgage Payoff must be remitted in the form of **certified funds**. Acceptable methods include: **certified check, cashier's check or wire transfer. Personal checks, business checks, and ACH payments are not accepted** for Payoff transactions.

**Wiring Instructions -**
* **Must include "Reference" information listed below if wiring funds** *

Bank Name:
ABA Number:
Account Number:
Account Name:
Reference:
[redacted]

Payoff Mailing Address
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS .**

The next payment due date is 1/1/2026. Payments are made by Billing on a monthly basis. The interest rate for this payment is 4.75000% and the P & I payment is $550.28. The taxes are next due 3/31/2027.

**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Payoff Policy Details:

1. When remitting funds, **YOU MUST use our loan number** to ensure proper posting and provide us with the borrower's forwarding address .
2. **The Payoff total quoted above is valid to the stated good to date . Any transactions that occur on or after the issue date of this Payoff statement may change the total amount** .
3. Payoff funds are accepted Monday through Friday, excluding federal holidays, and will be effective same day if received by 3pm EST .
4. **Continue making your monthly payments until you send us the amount needed to Payoff your mortgage** to avoid late charges, adverse credit reporting, or if permitted by your loan documents, default interest charges .
    a. If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .
5. **If you are due for a refund**, that refund will be issued by check on day 20 after the date the loan is paid in full.
    a. Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .
6. The Payoff amount is subject to our final verification once we receive the Payoff funds . **We reserve the right, except where prohibited, to correct any portion of this statement at any time .**
7. **If the amount we receive is insufficient to Payoff this loan, we may use funds in the escrow balance to cover the short Payoff.**
8. We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the Payoff funds .
    a. You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
    b. Any existing lender-placed property insurance premium will be cancelled upon account Payoff, and any related unearned premiums will be refunded .
9. Once the loan is paid in full, the appropriate security instrument will be released as follows :
    a. Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .
    b. Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .

**IMPORTANT: Update Your Mailing Address for Tax Documentation**

*“To ensure timely delivery of your tax documents related to your mortgage, please verify, and update your mailing address in your online account. To do so, sign into your account at myaccount.shellpointmtg.com and go to your dashboard. Then, click on the “down” arrow beside your profile icon and select My Profile. Here you can update your address and phone number. We encourage you to update your personal information whenever anything changes.”*

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**HINDSALEE BURRELL - Loan ID [redacted]**

## FEE DETAILS

| Description | Amount |
|---|---|
| BKPP- Property Inspection | $30.00 |
| Late Charge Payment | $137.55 |
| | **$167.55** |

## FUNDS OWED BY BORROWER DETAILS

| Description | Amount |
|---|---|
| Escrow Only Payment | $2,068.84 |
| | **$2,068.84** |

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is not an attempt to collect a debt due to your bankruptcy filing. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID [redacted]

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

# EXHIBIT "G"

Case 25-12800-djb Doc 58-1 Filed 10/16/25 Entered 10/16/25 15:11:29 Desc Exhibit Page 19 of 56

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Hindsalee** | | **Burrell** |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | **Eastern** District of **Pennsylvania** | | |
| Case number | | | |

❑ Check if this is an amended filing

# Official Form 106A/B

## Schedule A/B: Property

12/15

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

❑ No. Go to Part 2.
☑ Yes. Where is the property?

1.1 **3031 Dowitcher Pl**
Street address, if available, or other description

**Philadelphia, PA 19142-3308**
City State ZIP Code

**Philadelphia**
County

**What is the property?** Check all that apply.
☑ Single-family home
❑ Duplex or multi-unit building
❑ Condominium or cooperative
❑ Manufactured or mobile home
❑ Land
❑ Investment property
❑ Timeshare
❑ Other

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
❑ Debtor 2 only
❑ Debtor 1 and Debtor 2 only
❑ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$134,996.00** | **$134,996.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
**Fee Simple**

❑ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Source of Value:** **Zillow ($168,745 less 20% closing costs)**

If you own or have more than one, list here:

Case 25-12800-djb Doc 1 Filed 07/16/25 Entered 07/16/25 10:06:14 Desc Main Document Page 11 of 56

Debtor **Burrell, Hindsalee** Case number *(if known)* ______

1.2 **5629 Malcolm Street**
Street address, if available, or other description

**Philadelphia, PA 19143**
City State ZIP Code

**Philadelphia**
County

**What is the property?** Check all that apply.
- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other ______

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $117,044.00 | $117,044.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee Simple**

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:** ______

**Source of Value:** **Zillow ($146,305 less 20% closing costs)**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** ........ ➔ **$252,040.00**

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

- ☐ No
- ☑ Yes

3.1 Make: **Toyota**
Model: **Rav 4**
Year: **2021**
Approximate mileage: **25000**
Other information:
**Source of Value: KBB**

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $19,578.00 | $19,578.00 |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

- ☑ No
- ☐ Yes

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ........ ➔ **$19,578.00**

Debtor **Burrell, Hindsalee** Case number *(if known)*

## Part 3: Describe Your Personal and Household Items

| **Do you own or have any legal or equitable interest in any of the following items?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|
| 6. **Household goods and furnishings**<br>*Examples:* Major appliances, furniture, linens, china, kitchenware<br>❑ No<br>☑ Yes. Descr be. ......... **Various used pieces of furniture, furnishings, appliances, linens, and other similar items, each valued at $600 or less.** | **$400.00** |
| 7. **Electronics**<br>*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games<br>❑ No<br>☑ Yes. Descr be. ......... **Various used televisions, mobile devices, and computers, each valued at $600 or less.** | **$300.00** |
| 8. **Collectibles of value**<br>*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collect bles<br>☑ No<br>❑ Yes. Descr be. ......... | |
| 9. **Equipment for sports and hobbies**<br>*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments<br>☑ No<br>❑ Yes. Descr be. ......... | |
| 10. **Firearms**<br>*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment<br>☑ No<br>❑ Yes. Descr be. ......... | |
| 11. **Clothes**<br>*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories<br>❑ No<br>☑ Yes. Descr be. ......... **Various used articles of clothing, shoes, and accessories, each valued at $600 or less.** | **$150.00** |
| 12. **Jewelry**<br>*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver<br>❑ No<br>☑ Yes. Descr be. ......... **Various used pieces of jewelry.** | **$150.00** |

Case 25-12800-djb Doc 58-1 Filed 11/26/25 Entered 11/26/25 10:35:29 Desc Exhibit Page 64 of 66

Debtor Burrell, Hindsalee Case number *(if known)*

13. **Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☑ No

❑ Yes. Descr be. .........

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No

❑ Yes. Give specific information. .............

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ➔ **$1,000.00**

## Part 4: Describe Your Financial Assets

**Do you own or have any legal or equitable interest in any of the following?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

16. **Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No

❑ Yes ........ Cash: ..................

17. **Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

❑ No

☑ Yes .....................

| | Institution name: | |
|---|---|---|
| 17.1. Checking account: | **Capital One Account Number: 7147** | **$125.00** |
| 17.2. Checking account: | **Chase Account Number: 1860** | **$12.00** |
| 17.3. Checking account: | **Navy Federal Credit Union Account Number: 0343** | **$0.00** |
| 17.4. Checking account: | **Trumark Account Number: 0004** | **$300.00** |
| 17.5. Savings account: | **Capital One Account Number: 8785** | **$0.00** |
| 17.6. Savings account: | **Navy Federal Credit Union Account Number: 9400** | **$25.00** |
| 17.7. Other financial account: | **Capital One Account Number: 3275** | **$0.00** |

Debtor **Burrell, Hindsalee** Case number *(if known)*

18. **Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No

❑ Yes ....................

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No

❑ Yes. Give specific information about them....................

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

❑ Yes. Give specific information about them....................

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

❑ No

☑ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| 401(k) or similar plan: | **Fidelity American Airlines** | **$1,095.00** |

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No

❑ Yes .....................

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

❑ Yes ....................

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

❑ Yes ....................

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

❑ Yes. Give specific information about them. ...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**

*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

❑ Yes. Give specific information about them. ...

27. **Licenses, franchises, and other general intangibles**

*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

❑ Yes. Give specific information about them. ...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

☑ No

❑ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ...................

29. **Family support**

*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

❑ Yes. Give specific information. ........

30. **Other amounts someone owes you**

*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No

❑ Yes. Give specific information. ........

31. **Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

❑ Yes. Name the insurance company of each policy and list its value. ...